UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COLUMBIA GULF TRANSMISSION, LLC** | **CIVIL ACTION** |
| **VERSUS** | **No. 23-2793** |
| **14.226 ACRES MORE OR LESS, IN LAFOURCHE PARISH ET AL.** | **SECTION I** |

### ORDER & REASONS

Before the Court is an unopposed motion[1] filed by Columbia Gulf Transmission, LLC ("Columbia"). The motion requests an order authorizing Columbia to condemn certain interests in real property located on a tract of land in Lafourche Parish, Louisiana (the "servitudes") and a preliminary injunction granting Columbia immediate access to and use of those servitudes. Columbia also filed a supplemental memorandum[2] in support of its motion. For the reasons that follow, the Court grants the motion.

### I. BACKGROUND

Columbia is a "Delaware limited liability company licensed to transact business in Louisiana."[3] Columbia is "in the business of transporting natural gas in interstate commerce" pursuant to authorization from the Federal Energy Regulatory

---

[1] R. Doc. No. 3.
[2] R. Doc. No. 46.
[3] R. Doc. No. 1, ¶ 3.

Commission ("FERC").[4] Because it is engaged in the "transportation of natural gas in interstate commerce, or in the sale in interstate commerce of such gas for resale," Columbia is a natural gas company as defined by 15 U.S.C. § 717a(6).

Columbia seeks to obtain a servitude and right-of-way in this matter as part of the East Lateral Xpress Project (the "Project"), which was specifically authorized and permitted by FERC in a Certificate of Public Convenience and Necessity ("FERC Certificate") dated March 22, 2022.[5] The FERC Certificate states:

> The proposed project will enable Columbia Gulf to provide firm transportation service for Venture Global. We find that Columbia Gulf has demonstrated a need for the East Lateral XPress Project, that the project will not have adverse economic impacts on existing shippers or other pipelines and their existing customers, and that the project's benefits will outweigh any adverse economic effects on landowners and surrounding communities. We have analyzed the technical aspects of the projects and conclude that it has been appropriately designed to achieve its intended purpose. Based on the discussion above, we find under section 7 of the NGA that the public convenience and necessity requires approval of the East Lateral Xpress Project, subject to the conditions in this order.[6]

In order to construct the Golden Meadow Compressor Station contemplated as part of the Project, Columbia must acquire all of the property rights necessary to enter the property.[7] Although Columbia obtained property rights from various property owners, it has been unable to reach an agreement with many of them,

---

[4] *Id.* ¶ 5.
[5] R. Doc. No. 3-1 (citing R. Doc. No. 3-3 (declaration of Dan Winkler) and R. Doc. No. 1-3 (FERC Certificate)).
[6] R. Doc. No. 1-3.
[7] R. Doc. No. 3-1, at 6.

primarily "because the landowners are deceased, cannot be located after a diligent search or have declined to grant the requested rights."[8]

Accordingly, Columbia filed the instant lawsuit, seeking to acquire a servitude of right of use and right of way over the Property for the construction of the Compressor Station and appurtenant facilities.[9] Columbia originally named 78 defendants believed to be the record owners of the real property sought to be condemned.[10] In its supplemental memorandum, Columbia explained that it had entered into settlements with 47 of the named landowners, leaving 31 landowner defendants in the action.[11] Since then, four additional landowners have been dismissed as parties.[12] Accordingly, 27 landowner defendants remain in the action. Service of Notice of Condemnation has been properly completed on these defendants in accordance with Federal Rule of Civil Procedure 71.1(d).[13] No defendant filed an answer or appearance pursuant to Federal Rule of Civil Procedure 71.1(e).[14]

## II. LAW & ANALYSIS

### a. Jurisdiction and Venue

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and Section 7h of the Natural Gas Act, 15 U.S.C. § 717f(h).

---

[8] *Id.*
[9] R. Doc. No. 1, ¶ 12.
[10] R. Doc. 46, ¶ 2.
[11] *Id.* ¶ 4.
[12] R. Doc. Nos. 49, 51.
[13] R. Doc. 46, ¶ 6.
[14] *Id.* ¶ 7.

Pursuant to 15 U.S.C. § 717f(h), "the amount claimed by the owner of the property to be condemned exceeds $3,000."[15] Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the property that is the subject of this action is located in the Eastern District of Louisiana.[16]

### b. Substantive Right of Condemnation

"[I]mmediate possession is available in a condemnation action under the Natural Gas Act upon a well-founded motion for a preliminary injunction." *Gulf Crossing Pipeline Co., LLC v. 86.36 Acres of Land*, No. 08-689, 2008 WL 2465892, at *2 (W.D. La. June 18, 2008) (citing *E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808 (4th Cir.)). However, the Court must first determine whether the condemnor—here, Columbia—has a substantive right to condemn pursuant to the Natural Gas Act. *See id.* Once a court recognizes the condemnor's right to condemn, "the equitable remedy of immediate possession is available if the condemnor can otherwise satisfy the criteria for preliminary injunctive relief." *Id.* at *4. This "represents the approach taken by virtually every federal court that has considered the issue[.]" *Id.* at *3 (collecting cases).

In order to establish the substantive right to condemn pursuant to the natural Gas Act, the movant must establish: (1) that it holds a FERC Certificate of Public Necessity authorizing it to construct the facilities contemplated in the Project; (2)

---

[15] *See also* R. Doc. No. 1, ¶ 1 ("The value of the property interests to be taken exceeds $3,000.00, or the Landowners claim that the value of such easements exceeds $3,000.00."). The Court notes that it granted Columbia's motion to deposit $5,000.00 into the registry of this Court. R. Doc. No. 8.
[16] *Id.* ¶ 2.

4

that it has been unable to acquire the property rights in question by contract with the landowner; and (3) that the condemnation is for a public and necessary purpose. *See* 15 U.S.C. § 717f(c)(1)(A), (h); *see also E. Tenn. Nat. Gas, LLC v. 1.28 Acres in Smyth Cnty., Va.*, Nos. 06-CV-00022 *et al.*, 2006 WL 1133874, at *1 (W.D. Va. Apr. 26, 2006).[17]

The Court finds that these elements have been satisfied. First, Columbia holds a FERC Certificate of Public Convenience and Necessity, which was issued on March 22, 2022.[18] Second, as noted, Columbia has been unable to acquire the property rights in question by contract. Columbia has submitted the declaration of Danny Winkler, its project Manager.[19] Mr. Winkler avers that "Columbia has obtained the needed property rights" from several owners, but "has been unable to reach an agreement" with others, primarily "because the landowners are deceased, cannot be located after a diligent search, or have declined to grant the requested rights."[20]

Finally, Columbia has shown that the condemnation is for a necessary and public purpose. "A federal court should give presumptive weight to a FERC

---

[17] The Court adopts the elements to the Substantive Right to Condemnation as presented by Columbia. Courts throughout the country have presented the elements in differing fashions, though the core tenants of the action remain consistent. *See e.g.*, *TransCameron Pipeline, LLC v. Pipeline Servitude Across Parcel of Prop. Situated in Section 20, Twp. 14 S., Range 7 W., Cameron Par., La.*, No. 19-CV-0567, 2019 WL 3941297, at *1 (W.D. La. June 20, 2019); *Kansas Pipeline Co. v. 200 Foot by 250 Foot Piece of Land Located in Section 6, Southwest Quarter, Township 32 South, Range 10 West, County of Barber, State of Kansas*, 210 F.Supp. 2d 1253 (D. Kan. 2002); *East Tennessee Natural Gas, LLC v. 1.28 Acres in Smyth Cnty., Va.*, 2006 WL 1133874, at *1 (W.D. Va. April 26, 2006).

[18] R. Doc. No. 1, ¶ 7; R. Doc. No. 3-1, at 9; R. Doc. No. 3-3, ¶ 3.

[19] R. Doc. No. 3-3.

[20] *Id.* ¶ 12.

Certificate and leave the inquiry into the public purpose and necessity to the legislative and administrative arm of the government." *Transcontinental Gas Pipe Line Corp. v. 118 Acres of Land*, 745 F. Supp 366, 372 (E.D. La. June 19, 1990) (McNamara, J.). Accordingly, based on the issuance of the FERC certificate, the Court is satisfied that the condemnation is for a necessary and public purpose. Columbia has therefore demonstrated that it has the substantive right to condemn the property rights in question.

### c. Preliminary Injunction

"[I]n a condemnation action under the Natural Gas Act, once the condemnor's right to condemn has been recognized by the court, the equitable remedy of immediate possession is available if the condemnor can otherwise satisfy the criteria for preliminary injunctive relief." *Gulf Crossing*, 2008 WL 2465892, at *1. To meet the standard for injunctive relief, the movant must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to the movant outweighs the threatened harm an injunction will cause defendants, and (4) that the granting of the injunction will not disserve public interest. *Tesfamichael v. Gonzales*, 411 F.3d 169, 172 (5th Cir. 2005).

First, Columbia has established a likelihood of success on the merits. *See Tesfamichael*, 411 F.3d at 172. As discussed above, Columbia has satisfied all the requirements for a substantive right to condemnation. Accordingly, the first requirement is met.

Second, Columbia has shown that there is a substantial likelihood that the movant will suffer irreparable injury if the injunction is not granted. *See Tesfamichael*, 411 F.3d at 172. Columbia establishes through Mr. Winkler's declaration that it would be irreparably harmed without access to the property because its inability to access such property rights would frustrate commitments from specialized contractors. Specifically, "Columbia has entered into binding commitments with natural gas producers to transport natural gas through the Golden Meadow Compressor Station in service to existing pipeline infrastructure, as well as binding commitments with various construction companies to build the Golden Meadow Compressor Station and related appurtenant facilities, each with specific deadlines and penalties associated with delay."[21] As Columbia points out,[22] courts have found the irreparable harm requirement was satisfied where the condemnor's inability to access the property would frustrate commitments from specialized contractors. *See, e.g.*, *Tenn. Gas Pipeline Co. v. New England Power*, 6 F. Supp. 2d 102, 104 (D. Mass. 1998); *Spire STL Pipeline LLC v. 3.31 Acres of Land*, No. 18-1327, 2018 WL 7020807, at *6 (E.D. Mo. Nov. 26, 2018). Accordingly, Columbia has established that there is a substantial likelihood it will suffer irreparable injury if the injunction is not granted because construction delays and loss of specialized contractors qualify as irreparable harm.

---

[21] R. Doc. No. 3-3, ¶ 7.
[22] R. Doc. No. 3-1, at 11.

7

Third, Columbia has shown that the threatened injury to Columbia outweighs the threatened harm an injunction will cause the defendant landowners. *See Tesfamichael*, 411 F.3d at 172. As previously discussed, Columbia has established that it will suffer irreparable injury if the injunction is not granted. On the other hand, "[i]n any condemnation proceeding under the Natural Gas Act, any hardship to the landowner caused by immediate possession is slight at best, especially when the landowner has the right to draw down the money deposited by the condemnor in the registry of the court." *Gulf Crossing*, 2008 WL 2465892, at *4–5 (citing *Sage*, 361 F.3d 808, at 829). In this case, the Court granted Columbia's motion to deposit funds into the registry of the Court.[23] Additionally, the landowners retain the right to seek additional compensation at a later trial to be held for that purpose and the property is not occupied by the landowners.[24] The Court therefore finds that the balance of hardships favors injunctive relief.

Fourth, Columbia has shown that the granting of the requested injunction will not disserve public interest. *See Tesfamichael*, 411 F.3d at 172. Other courts have found that injunctive relief was "in the public interest" where it was "consistent with the rationale and basis for FERC's certificate of public convenience and necessity" and where granting the injunction to permit pipeline construction prior to the determination of just compensation would aid in ensuring that a FERC-approved project would not be delayed. *See, e.g.*, *Gulf Crossing*, 2008 WL 2465892, at *7. Those

---

[23] R. Doc. No. 8.
[24] R. Doc. No. 3-1, at 12.

8

rationales apply with equal force in the instant case since FERC has issued a certificate and a preliminary injunction would aid in ensuring that construction will not be delayed. Accordingly, Columbia has satisfied the four requirements for a preliminary injunction.

### III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Columbia's motion to confirm the right to condemn and for immediate possession of the property rights at issue is **GRANTED.**

In due course, the Court will set a trial or trials on the issue of the just compensation to be paid by Columbia to the defendants, and after the same, enter judgment(s) vesting full ownership and title of the subject property rights in Columbia upon the payment of the just compensation into the registry of the court.

New Orleans, Louisiana, October 27, 2023.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE